Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3460 | **DATE** | Sept. 4, 2002 |
| **CASE TITLE** | International Truck and Engine v Dow-Hammond Trucks Co. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Memorandum opinion and order entered. Accordingly, defendant's motion to dismiss for lack of personal jurisdiction and venue pursuant to FRCP 12(b)(2) and 12(b)(3) is denied, and defendant's motion to transfer venue to the Eastern District of California pursuant to 28 USC §1404(a) is granted.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | SEP 12 2002 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| | Docketing to mail notices. | | CV | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

INTERNATIONAL TRUCK AND ENGINE )
CORPORATION, a Delaware corporation, and )
INTERNATIONAL TRUCK INTELLECTUAL )
PROPERTY COMPANY, LLC, an Illinois limited )
liability company, )
)
        Plaintiffs, )
) No. 02 C 3460
   v. )
) Judge Robert W. Gettleman
DOW-HAMMOND TRUCKS CO., a California )
corporation, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

International Truck and Engine Corp. and its wholly owned subsidiary, International Truck Intellectual Property Co., LLC, filed this suit for injunctive and monetary relief against Dow-Hammond Trucks Co., alleging trademark infringement under the Lanham Act, 15 U.S.C. §1051 et seq., common law trademark infringement and unfair competition, and breach of contract. Defendant has filed a motion pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(3) to dismiss this action for lack of personal jurisdiction and improper venue or, in the alternative, to transfer venue pursuant to 28 U.S.C. §1404(a) to the Eastern District of California. For the reasons stated below, defendant's motion to dismiss is denied and the motion to transfer venue is granted.

## BACKGROUND

International Truck and Engine Corp. ("International"), formerly known as Navistar International Transportation Corp., is a Delaware corporation with its principal place of business located in Warrenville, Illinois. International Intellectual Property Co., LLC is an Illinois limited

liability company that owns International's trademarks, servicemarks and tradename. Defendant Dow-Hammond is a California corporation with its principal place of business located in Modesto, California.

International manufactures and assembles trucks, distributes service parts and accessories, and operates through a network of independent dealers throughout the United States, Canada and Mexico. International's authorized dealers sell its trucks, parts, accessories and services, in addition to providing maintenance and warranty service.

Defendant has operated an International dealership in Modesto, California for over fifty years. On June 29, 1993, defendant's new owner, Russ Jones, traveled to Chicago, Illinois, to meet with International and obtain approval to serve as defendant's Dealer Principal. On December 20, 1993, shortly after International's approval of Jones, International and defendant entered into a revised Dealer Sales/Maintenance Agreement authorizing defendant to operate an International dealership at 715 G Street in Modesto, California. The agreement did not contain any choice of law or venue provisions, but did outline specific requirements for defendant's operation of International's dealership and the use of International's trademarks. For example, section 16(c)(3) of the agreement provided that "[the Dealer further agrees] to maintain its retail establishment at [715 G Street, Modesto, California], and not move to a different location nor to establish another sales office, maintenance center, maintenance parts facility, or new or used vehicle lot without the prior written approval of [International]." Moreover, according to section 16(c)(8) of the agreement, the dealer agreed to "attend [International]-conducted or sponsored product, sales and maintenance meetings and use training materials and programs which may be offered by [International] from time to time."

Defendant does not own or maintain any property, office, branch, plant or telephone listing in Illinois. Nonetheless, between 1994 and 1997, defendant's employees made seven trips to International's offices in Illinois for training purposes, and Jones and another employee traveled to Chicago on April 24, 2000, to attend an International dealer conference. In addition, in furtherance of its operation of an International dealership, defendant entered into three license agreements with International regarding computer systems used at the dealership and submitted 12,305 warranty claims to International in Illinois between January 1, 1994, and June 3, 2002.

On May 27, 2000, defendant relocated its International dealership approximately one mile to 1419 South 7th Street, Modesto, California, without obtaining International's prior written approval. On June 6, 2000, International informed defendant that it would not approve of the new 7th Street location due to customer service deficiencies, such as a lack of drive-through service bays and the lack of sufficient space for attractively displaying parts. Defendant subsequently filed protests with the California New Motor Vehicle Board, alleging that International's refusal to approve the new 7th Street location was based on an impermissible modification of the franchise agreement and constituted constructive termination of defendant's truck franchise.

Although defendant voluntarily dismissed its protests with the California New Motor Vehicle Board, plaintiffs and defendant have been unable to resolve their differences regarding defendant's relocation of its International dealership. Plaintiffs allege that they have withdrawn permission for defendant to operate an International dealership at the new 7th Street location and use International's trademarks, and that defendant's continued operation of the dealership and

use of International's trademarks at the 7th Street location constitute trademark infringement, unfair competition, and breach of contract.[1]

**DISCUSSION**

1. Motion to Dismiss

*Personal Jurisdiction*

Defendant has moved to dismiss for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). When evaluating personal jurisdiction over a defendant, the court can consider affidavits submitted by the parties, see Kontas v. U.S. Dept. of Labor, 826 F.2d 573, 576 (7th Cir. 1987), and "must accept all undenied factual allegations and resolve all factual disputes in favor of the party seeking to establish jurisdiction." Saylor v. Dyniewski, 836 F.2d 341, 342 (7th Cir. 1988).

To determine whether the court has personal jurisdiction over a defendant in a federal question case, the court must ask whether haling the defendant into this court accords with the due process clause of the Fifth Amendment, which requires both that the defendant have sufficient minimum contacts with the United States as a whole, and that the defendant be amenable to service of process. United States v. Martinez De Ortiz, 910 F.2d 376, 381-82 (7th Cir. 1990). In the instant case, defendant, a California corporation engaged in business in the

---

[1] On June 20, 2002, after plaintiffs filed their complaint, defendant filed two protests and one petition against International with the California New Vehicle Board: (1) the first protest alleges that International's refusal to approve defendant's relocation was based on a modification of the original agreement; (2) the second protest alleges that the relief sought in the instant case constitutes constructive termination of the agreement in violation of the California Vehicle Code; and (3) the petition seeks injunctive and declaratory relief with the California New Motor Vehicle Board to prevent International from terminating its franchise either through the instant lawsuit or other means. The protests and petitions are scheduled to be heard November 4, 2002, through November 22, 2002.

4

United States, indisputably has sufficient minimum contacts with the United States. The question becomes, then, whether, at the time of filing, defendant was amenable to service of process.

Under Fed.R.Civ.P. 4(k), service of the instant complaint may be accomplished "when authorized by a statute of the United States," or if the defendant "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed.R.Civ.P. 4(k)(1)(A), (D). The federal statute governing this case, the Lanham Act, does not authorize nationwide service of process. See 15 U.S.C. § 1121; McMaster-Carr Supply Co. v. Supply Depot, Inc., No. 98 C 1903, 1999 WL 417352 at * 2 (N.D.Ill. June 16, 1999). Therefore, the court must determine whether defendant is subject to the jurisdiction of an Illinois state court pursuant to the Illinois long arm statute, 735 ILCS § 5/2-209. Boston Chicken, Inc. v. Market Bar-B-Que, Inc., 922 F.Supp. 96, 98 (N.D. Ill. 1996).

Because Illinois' long-arm statute extends to the "limit allowed by the Constitution of the United States" and the Illinois Constitution, the inquiry becomes whether defendant's minimum contacts with this forum comport with Fourteenth Amendment due process. Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir. 1997), RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1276 (7th Cir. 1997) (finding that, although the way in which the due process guarantee of the Illinois Constitution is to be construed is for the Illinois Supreme Court to decide, the court has provided very little guidance in this matter, and therefore it is best to examine due process under federal law).

In order to comport with due process, defendant "must have 'minimum contacts' with Illinois such that maintaining a lawsuit here would not offend 'traditional notions of fair play and

substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In other words, defendant must have "purposefully availed" itself of the benefits of conducting activities in Illinois such that it should "reasonably anticipate being haled into court" here. Worldwide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980). Defendant may not be forced to defend this lawsuit in Illinois "solely as a result of random, fortuitous, or attenuated contacts" or because of the "unilateral activity of another party or third person." Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174 (1985).

In Burger King, the Supreme Court found that a Florida court's exercise of long-arm jurisdiction over a Michigan franchisee who had established a continuing relationship with Burger King's Miami, Florida headquarters did not offend due process. Id. at 487. In that case, the franchisee had not been physically present in Florida, but had engaged in extensive negotiations and transactions with the Miami headquarters via phone and mail, and his contract provided that the franchise agreement was governed by Florida law. Id. at 466-468. In concluding that the defendant was subject to personal jurisdiction in Florida, the Court evaluated the prior negotiations of the parties and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing, and found that, "in light of [defendant's] voluntary acceptance of the long-term and exacting regulation of his business from Burger King's Miami headquarters, the "quality and nature" of his relationship to the company in Florida can in no sense be viewed as 'random,' 'fortuitous,' or 'attenuated.'" Id. at 480.

In the instant case, defendant negotiated a contract with International, which is headquartered in Illinois, and traveled to Illinois on several occasions in furtherance of that contract. Although many of these visits were arguably at the direction of International, defendant

should have reasonably anticipated from the terms of the 1993 agreement that its operation of an International dealership required occasional travel to International's headquarters in Illinois; hence, such visits cannot be characterized as "unilateral." Moreover, defendant submitted 12,305 claims to International in Illinois and executed three additional license agreements with International in Illinois, all of which stemmed from the 1993 agreement that plaintiffs allege has been breached by defendant. Like the franchisee in Burger King, defendant's contacts cannot be viewed as "random," "fortuitous," or "attenuated," and the assertion of personal jurisdiction over defendant comports with due process.

Defendant emphasizes that, in contrast to the franchise agreement in Burger King, its agreement with International did not contain any choice of law or venue provisions. Defendant argues that because California law governs this dispute, it reasonably expected and anticipated that it would be haled into court only in California (specifically, before the California New Motor Vehicle Board). Notwithstanding the potential merits of defendant's choice of law analysis, defendant's argument is not persuasive.

First, choice of law analysis must be kept distinct from minimum contacts analysis, which focuses on the defendant's purposeful connection to the forum. Hanson v. Deckla, 357 U.S. 235, 253-254 (1958). Indeed, the entirety of choice of law jurisprudence presupposes the ability of a court in one state to apply the law of a sister state, and an Illinois court is certainly capable of applying California law under appropriate circumstances. Second, in Burger King, the Court noted that the choice of law provision by itself was insufficient to confer jurisdiction; rather, the Court explained that, when combined with the 20-year interdependent relationship between the franchisee and Burger King's Miami headquarters, the choice of law provision merely

7

"reinforced the franchisee's deliberate affiliation with the forum state and the reasonable foreseeability of possible litigation there." Burger King, 471 U.S. at 462, 105 S.Ct. 2174.

Defendant further argues that, because relocation and termination disputes are within the exclusive jurisdiction of the California New Motor Vehicle Board, plaintiffs must provide notice of termination and seek termination of the distributorship from that agency before seeking relief for trademark infringement in this court. Defendant cites this court's decision in Peter v. Stone Park Enterprises, L.L.C. for the proposition that plaintiffs may not sue for trademark infringement before formally seeking termination of the distributorship in writing. 1999 U.S. Dist. LEXIS 11385, at *6-7 (N.D.Ill. July 22, 1999). This court's holding in Stone Park, however, was in response to a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim under the Lanham Act, and therefore did not consider this court's ability to assert personal jurisdiction over the defendant. Id.[2] Whether notice of termination of the distributorship is required in the instant case, or has already been given, is immaterial to this court's determination of personal jurisdiction.

Further, to the extent that defendant's argument suggests that this court lacks subject matter jurisdiction over the instant dispute, the court notes that Cal. Veh. Code § 3050(e) provides that, notwithstanding the New Motor Vehicle Board's jurisdiction over certain disputes, "the courts have jurisdiction over all common law and statutory claims originally cognizable in

---

[2]Defendant also asserts that its appearances before the California New Motor Vehicle Board led it to reasonably expect and anticipate that it would be haled into court only in California. This argument is not persuasive, however, because simply submitting to the jurisdiction of an administrative board in one state does not preclude a party from being subjected to another state's jurisdiction. Indeed, if it were otherwise, any party could routinely evade any court's jurisdiction by the simple expedient of filing a claim in another jurisdiction.

8

the courts. For those claims, a party may initiate an action directly in any court of competent jurisdiction."

Because of defendant's extensive and ongoing contacts with International in Illinois regarding its operation of the dealership at issue, this court finds that defendant is subject to personal jurisdiction in Illinois.

*Venue*

Having established that defendant is subject to personal jurisdiction in Illinois, venue is proper in this district. 28 U.S.C. §1391(b) provides that:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

For the purposes of venue, a "defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." 28 U.S.C. §1391(c). Because defendant Dow-Hammond, a California corporation, is the only defendant in the instant case, and this court has found that it may assert personal jurisdiction over defendant, venue is proper in this district.

2. Motion to Transfer Venue

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." Transfer is appropriate when the moving party demonstrates that: 1) venue is proper in both the transferor and transferee courts; 2) transfer is for the

9

convenience of the parties and witnesses; and 3) transfer is in the interests of justice. Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219 (7th Cir. 1986). As a moving party, defendant must show that the "transferee forum is clearly more convenient" than the transferor forum. Heller Financial, Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1293 (7th Cir. 1989) (citing Coffey, 796 F.2d at 219-20). Additionally, defendant must show that a transfer will promote the efficient administration of justice, rather than simply shift the inconvenience from one party to the other. See Black v. Mitsubishi Motors Credit of America, Inc., 1994 WL 424112 at *2 (N.D. Ill. Aug. 10, 1994).

As established above, venue is proper in the Northern District of Illinois, the proposed transferor court. Moreover, the parties agree that venue is also proper in the proposed transferee court, the Eastern District of California. Therefore, the court has the power to transfer the case if to do so is in the interest of justice and for the convenience of parties and witnesses. In evaluating the convenience and fairness of a transfer, the court considers relevant private and public interests. The private interests include: 1) plaintiff's initial choice of forum; 2) the situs of material events; 3) ease of access to sources of proof; 4) the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of the witnesses; and 5) the convenience to the parties, specifically their respective residences and their ability to bear the expense of litigation in a particular forum. Georgouses v. NaTec Resources, Inc., 963 F. Supp. 728, 730 (N.D. Ill. 1997).

Plaintiff's choice of forum is entitled to substantial weight, particularly when it is also its home forum. Vandeveld v. Christoph, 877 F. Supp. 1160, 1167 (N.D. Ill. 1995). Plaintiff's choice is not, however, conclusive. When "the conduct and events giving rise to the cause of

10

action did not take place in the plaintiff's selected forum, the plaintiff's preference has minimal value" even if it is its home forum. Dunn v. Soo Line R. Co., 864 F. Supp. 64, 65 (N.D. Ill. 1994). "The weight given to plaintiff's choice of forum is lessened if the chosen forum has relatively weak connection with the operative facts giving rise to the claim." Von Holdt v. Husky Injection Molding Systems, Limited, 887 F. Supp. 185, 188 (N.D. Ill. 1995). Thus, the court must consider the situs of material events to determine how much weight to assign to plaintiff's choice of forum.

The instant case arises out of defendant's use of the International name and mark in Stanislaus County, California. As plaintiffs acknowledge, although the initial dealership agreement and negotiations regarding relocation may have been directed to plaintiffs in Illinois, California is in fact the state in which defendant performed and allegedly breached its dealership agreement, used plaintiffs' trademarks without authorization, and unfairly competed with plaintiffs. In trademark infringement actions, the situs of the injury is the location or locations where the infringing activity takes place, or where the unlawful use of the mark occurs. See Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1571 n. 31 (Fed. Cir. 1994) (and cases cited therein). Therefore, the situs of the material events is California, and the court concludes that plaintiff's choice of forum is not entitled to substantial weight. The first two private interest factors thus lean in defendant's favor.

The third factor, ease of access to evidence and sources of proof, also favors defendant. The core allegations of the complaint involve defendant's use of the International name and mark in the California area. Those claims are not substantially connected to Illinois, and any likelihood of confusion caused by defendant's California activity will likely be proven by

11

evidence directed at that activity. With respect to plaintiffs' breach of contract claim, the relocated dealership that is at the center of the parties' dispute is located in California, and defendant's activities in California are what led to the dispute. Hence, the court concludes that the ease of access to proof favors transfer to California.

The court finds that the fourth factor, convenience of witnesses, is neutral. Plaintiffs argue that their four key witnesses, all International employees, are located in Illinois. Because these witnesses are within plaintiffs' control, however, this court is not persuaded that convenience of these witnesses favors the plaintiffs. Similarly, defendant has identified several International and Dow-Hammond employee-witnesses in California who have knowledge relevant to the instant case, most of whom are presumably within the plaintiffs' or defendant's control. At best, therefore, this factor favors neither party.

The last private interest factor, the convenience to parties, clearly favors defendant. Defendant's former and current business sites, as well as all of its employees, are located in California. Again, most of the proofs will center around defendant's California activities in moving the location of its dealership. The reasonableness of plaintiffs' refusal to allow that move will also center around those activities occurring in California.

In addition to the private interest factors, the court must also consider certain public interest factors that may warrant transfer: 1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; 2) the court's familiarity with applicable law; and 3) the congestion of the respective court dockets and the prospects for an earlier trial. See Hughes v. Cargill, Inc., 1994 WL 142994 at *2 (N.D. Ill. April 14, 1994). The first factor favors transfer, since the core issue in the case revolves around activities in the

California area. Moreover, plaintiffs are seeking preliminary and permanent injunctive relief to prevent defendant from using plaintiffs' trademarks and selling their products in the local market in California. The nature and extent of any such injunctive relief will necessarily have a distinct local effect in the Eastern District of California.

The court notes that defendant also argues that pending proceedings are currently scheduled to be heard in November 2002 before the California New Motor Vehicle Board, which defendant claims has exclusive or primary jurisdiction over the instant dispute involving what defendant regards as a constructive termination of its franchise. The imminence of those proceedings,[3] which are scheduled to be concluded long before the instant case could be tried on the merits, as well as the likelihood of claim preclusion and the economies that could be achieved by coordinating pre-hearing discovery, all argue in favor of transferring this case to California.

The second factor also favors defendant. It appears from the pleadings that the defendant accepted the contract in California and principally performed the contract in California, such that California law would likely govern plaintiffs' breach of contract claim. Similarly, plaintiffs' common law infringement claim will likely be decided under the laws of California, since that is the site of the injury. The remaining claims are based on federal statutory law with which both courts are equally familiar.

The final factor, the speed at which the trial will progress, is neutral. Plaintiffs have presented evidence that the median time interval between the filing of a civil case and trial in the Northern District of Illinois is 25.5 months, compared with 26.5 months in the Eastern District of

---

[3] The court notes that International has moved to dismiss the actions that are before the New Motor Vehicle Board and briefing on those motions is currently underway.

13

California. This 1.1 month difference is negligible and does not mitigate against transfer to the Eastern District of California.

Consideration of the foregoing public and private interests convinces this court that, in the interest of justice and for the convenience of parties and witnesses, a transfer of venue to the Eastern District of California pursuant to 28 U.S.C. §1404(a) is proper.

## CONCLUSION

For the foregoing reasons, defendant's motion to dismiss for lack of personal jurisdiction and venue pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) is denied, and defendant's motion to transfer venue to the Eastern District of California pursuant to 28 U.S.C. §1404(a) is granted.

**ENTER:    SEPTEMBER 4, 2002**

_____
**Robert W. Gettleman**
**United States District Judge**